21-1929
United States et al. v. City of New York

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of August, two thousand twenty-three.

PRESENT:
>JON O. NEWMAN,
>REENA RAGGI,
>MYRNA PÉREZ,
>>*Circuit Judges.*

---

United States of America,

>*Plaintiff-Appellee*,

Vulcan Society, Marcus Haywood, Candido Nunez, Roger Gregg, Jamel Nicholson, Rusebell Wilson, Kevin Walker, Kevin Simpkins,

>*Plaintiffs-Intervenors-Appellees*,

>v.         No. 21-1929

City of New York,

>*Defendant-Appellant*.[*]

---

| | |
|---|---|
| **FOR DEFENDANT-APPELLANT:** | JAMISON DAVIES, Assistant Corporation Counsel (Richard Dearing, Deborah A. Brenner, of counsel, *on the brief*), *for* Hon. |

---
[*] The Clerk of Court is respectfully directed to amend the caption as set forth above.

CERTIFIED COPY ISSUED ON 08/07/2023

|   |   |   |
|---|---|---|
|   |   | Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, New York, NY. |
|   | **FOR PLAINTIFF-APPELLEE:** | BARBARA SCHWABAUER (Bonnie I. Robin-Vergeer, *on the brief*), Attorneys, *for* Kristen Clarke, Assistant Attorney General, Civil Rights Division, United States Department of Justice, Washington, DC. |
|   | **FOR PLAINTIFFS-INTERVENORS-APPELLEES:** | JESSICA I. APTER (Dana E. Lossia, Robert H. Stroup, Rebekah Cook-Mack, *on the brief*), Levy Ratner, P.C. (Shayana Kadidal, Center for Constitutional Rights, *on the brief*), New York, NY. |

Appeal from a post-judgment order of the United States District Court for the Eastern District of New York (Nicholas G. Garaufis, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court entered on June 9, 2021 is **REVERSED** and **REMANDED**.

This is the latest iteration of a lawsuit involving the hiring practices of the New York City Fire Department ("FDNY"). Defendant-appellant the City of New York (the "City") appeals from a post-judgment order finding it to have violated Paragraph 16 of the district court's Modified Remedial Order ("MRO"), a permanent injunction instituted in June 2013 after the district court found that FDNY's hiring practices had a disparate impact upon Black and Hispanic applicants. *See United States v. City of New York*, 717 F.3d 72, 99 (2d Cir. 2013); *United States v. City of New York*, No. 07-CV-2067 (NGG) (RLM), 2021 WL 2349500, at *1 (E.D.N.Y. June 9, 2021) ("*MRO Violation Op.*"). Where a district court finds a violation of its order, its "interpretation of the terms of the underlying order or judgment is subject to *de novo* review; its factual findings are accepted unless they are shown to be clearly erroneous; and its ultimate ruling on the contempt motion is

1   reviewed for abuse of discretion." *Latino Officers Ass'n City of N.Y., Inc. v. City of New York*,
2   558 F.3d 159, 164 (2d Cir. 2009). Applying that standard here, we conclude that the district court
3   erred in finding that the City violated Paragraph 16 of the MRO by altering, without obtaining
4   approval from the Court Monitor (the "Monitor"), the number of candidates called at a time for
5   the Candidate Physical Ability Test ("CPAT"), a physical exam that entry-level firefighters must
6   pass before entering the FDNY Academy. We assume the parties' familiarity with the underlying
7   facts, the procedural history, and the issues on appeal, which we reference only as necessary to
8   explain our decision.

9   **I.      Appellate Jurisdiction**

10  Plaintiff-appellee the United States of America ("the United States") and plaintiffs-
11  intervenors-appellees ("Plaintiffs-Intervenors" and, together with the United States, the
12  "Plaintiffs") contest this Court's jurisdiction to review the district court's order. Appellate review
13  of violations of judicial decrees is subject to the limitations of 28 U.S.C. § 1291, which requires
14  "final decisions." We have held that civil contempt orders are appealable final decisions when the
15  proceedings "are instituted after the conclusion of the principal action rather than during the
16  pendency of the action." *United States v. O'Rourke*, 943 F.2d 180, 186 (2d Cir. 1991) (quoting
17  *Vincent v. Local 294, Int'l Bhd. of Teamsters*, 424 F.2d 124, 128 (2d Cir. 1970)); *see also State of*
18  *New York v. Shore Realty Corp.*, 763 F.2d 49, 51 (2d Cir. 1985) ("[A] contempt adjudication is a
19  post-judgment proceeding from which an appeal may be taken, even if some aspects of the
20  underlying litigation . . . remain to be determined."); 15B Charles Alan Wright & Arthur R. Miller,
21  Federal Practice and Procedure § 3917 (2d ed.) ("[F]inality may be found because as a practical
22  matter nothing remains to be done, because the contempt seems separable from the remaining
23  proceedings, or because a long-continuing action yields several effectively final judgments."); *cf.*

*N.Y. Tel. Co. v. Commc'ns Workers of Am.*, 445 F.2d 39, 45 (2d Cir. 1971) (noting that contempt orders are nonreviewable where a proceeding "was in its initial stages and the final relief was a matter of conjecture").

While the challenged violation order is not expressly denominated as a contempt, it is sufficiently similar to support our exercise of jurisdiction. This matter before us is not a pending principal action. As we have noted, it is a long-standing case, the merits of which have already been decided. All that remains is enforcement of the MRO, which exists "to remedy the disparate impact . . . [and] put the FDNY on a course toward future compliance with Title VII." *United States v. City of New York*, 717 F.3d at 99.

Plaintiffs' attempt to frame the district court's order as something other than a contempt order is unpersuasive. The district court acknowledged that "[t]o determine whether the City breached the MRO, [it and] the Monitor employed the legal standard for contempt of a court order as set out in *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)." *MRO Violation Op.*, 2021 WL 2349500, at *2. The district court also applied other case law that assessed the standard for proving civil contempt of a court order. *See id.* at *4 (citing *EEOC v. Local 638 . . . Local 28 of Sheet Metal Workers' Int'l Ass'n*, 753 F.2d 1172, 1178 (2d Cir. 1985), for the proposition that willful disobedience of a district court order is not necessary to prove civil contempt of a court order).

Because we conclude that the challenged violation order is effectively an appealable contempt order, we need not discuss Plaintiffs-Intervenors' argument that this order is not appealable under the collateral order doctrine.

## II. Violation of the MRO

Under *King*, a contempt order is warranted where a movant establishes that: "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *King*, 65 F.3d at 1058. The City challenges only the district court's application of the first and third factors.

Paragraph 16 of the MRO states that the City "shall not take any step in any process for the selection of entry-level firefighters . . . without first obtaining the approval of the . . . Monitor . . . through the processes specified by the Monitor." Joint App'x at 246 (MRO ¶ 16). Looking within the four corners of the MRO, Paragraph 11 defines the "[p]rocess for the selection of entry firefighters" as "refer[ring] to any and all steps taken by the City of New York to hire entry-level firefighters" and provides an illustrative list of steps. Joint App'x at 244 (MRO ¶ 11). None of the steps mention the CPAT at all, much less delve into the number of candidates called to take the test. And Plaintiffs, in briefing and at oral argument, could not convincingly explain why management of this administrative detail is necessary to further the goals of the MRO. The most applicable, granular example of a qualifying step provided in Paragraph 11 is "issuing a Notice of Examination to open an application period for any person to apply to take any examination to be hired by the City of New York as an entry-level firefighter." *Id.*

Even with this qualifying step as an example, however, the MRO did not "clear[ly] and unambiguous[ly]" require the City to obtain approval from the Monitor before altering the number of candidates called for each CPAT. *King*, 65 F.3d at 1058. Specifically, the MRO cannot be said to have left "'no uncertainty in the minds of those to whom it is addressed,' who 'must be able to ascertain from the four corners of the order precisely what acts are forbidden.'" *Id.* (first quoting

5

1    *Hess v. N.J. Transit Rail Operations, Inc.*, 846 F.2d 114, 116 (2d Cir. 1988); then quoting *Drywall*

2    *Tapers & Pointers of Greater N.Y., Local 1974 v. Local 530 of Operative Plasterers & Cement*

3    *Masons Int'l Ass'n*, 889 F.2d 389, 395 (2d Cir. 1989)).

4       We have considered Plaintiffs' remaining arguments and found them to be without merit.

5    Accordingly, we **REVERSE** the order of the district court, and **REMAND** for further proceedings

6    consistent with this order.

7
8                            FOR THE COURT:
9                            Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit